68 U.S. 352 (1863)
1 Wall. 352
UNITED STATES
v.
AUGUISOLA.
Supreme Court of United States.

*354 Mr. Wills, for the United States.
*355 Mr. Justice FIELD delivered the opinion of the court:
The respondent deraigns his title from Lopez and Arellanes, the alleged grantees of the Mexican governor, Micheltorena. In support of his claim before the board of commissioners, created under the act of 1851, he produced from the archives in the custody of the Surveyor-General of California the petition of the grantees for the land, the reports of the different public officers to whom the same was referred for information as to the property and the petitioners, the sketch or map accompanying the petition, and the concession of the governor, made on the 17th of March, 1843, declaring the petitioners "owners of the land" in question. He also produced a formal grant of the governor, bearing the same date with the order of concession, and a record of juridical possession delivered by the alcalde of the vicinage in 1847. No question was raised before the commissioners as to the genuineness of the several documents produced, and with proof of the signatures attached to the above grant and record, and that the grantees had constructed a house upon the premises immediately after receiving the grant; that the house was occupied by one of the grantees until the *356 sale to the claimant, and has been occupied by the claimant ever since, and that the land has been cultivated and used for the pasturage of cattle since its first occupation, the case was submitted. The board rejected the claim, not from any conclusion that the papers produced were not genuine, but solely upon the ground that the boundaries of the land granted were vague and indefinite, and that the land had not been segregated from the public domain. The case being removed by appeal to the District Court, the attorney of the United States, in answer to the claimant's petition for a review of the decision of the commissioners, set forth thirteen grounds for holding the claim invalid. Two of them related to the alleged invalidity of the transfer from the grantees to the claimant; two to the illegality of the juridical possession of the alcalde in 1847, and the remaining grounds were substantially these: that the land was situated within ten leagues of the sea-coast; that it was occupied by the missions of the territory, and therefore could not be colonized; that the grant had not the conditions required by the colonization law of 1824, or the regulations of 1828; that it did not give in itself, or with the aid of the map produced, any description by which the land could be identified; that it was not executed upon lawfully stamped paper; that it had not been approved by the Departmental Assembly, and that the grantees had not complied with the conditions annexed by constructing a house within a year, and inhabiting it and cultivating the land, and soliciting the proper judge for juridical possession. No objection was made that the title-papers produced were not genuine, or not executed at the time they purport to have been executed, and the additional evidence taken in the District Court was intended to show the location and boundaries of the land, and thus remove the objection to the confirmation given by the commissioners. The District Court reversed the decision of the board, and adjudged the claim of the respondent to be valid, and confirmed it to the extent of three square leagues. From this decree the United States have appealed, and in this court for the first time take the grounds, 1st, that the grant produced, *357 even if genuine, was not legally proved; and, 2d, that the grant is fraudulent and void.
The first objection arises from the fact that the governor who signed, and the Secretary of State who attested the grant, were not called to prove it or their absence accounted for, and that the instrument was admitted upon proof of their signatures. The usual preliminary proceedings to the issue of a Mexican grant in colonization having been produced from the archives, there was no presumption against the genuineness of the grant in question, requiring the strict proof of its execution mentioned in the cases of The United States v. Teschmaker,[*] and Fuentes v. The United States.[] Under these circumstances, the objection should have been urged before the commissioners or the District Court, and notice thus given to the claimant to procure further proof by calling the parties, or to show good reason for not calling them. Where no suspicion from the absence of the usual preliminary documentary evidence arises, as to the genuineness of the instrument produced, the general rule is, that objections to the sufficiency of the proof of its execution must be urged in the first instance before the inferior tribunal. In the present case, it is possible that the governor and secretary were without the jurisdiction of the court at the time the grant was produced, or the objection to the proof may not have been urged by the attorney of the government, who was present when it was given, because satisfied himself from other sources that the signatures were genuine, and that the grant was executed at the time it purports to have been executed, or because of his knowledge that the objection could have been readily obviated by testimony within the reach of the claimant.[]
The objection that the grant is fraudulent and void rests mainly upon the allegation of counsel, that it is not mentioned in the list of expedientes known as "Jimeno's Index." We say upon the allegation of counsel, for Jimeno's Index is *358 not in evidence, nor was any proof offered of its contents, and, under the circumstances of this case, if the fact were as alleged, it would not be entitled to much weight.
To the objections urged by the appellants, and to all objections of a similar kind, the observations of Mr. Justice Grier, in the case of The United States v. Johnson, decided at the present term, are applicable. "In taking objections to these Mexican grants," says the learned justice, "it ought to be remembered, that the case is not brought here on a writ of error with a bill of exceptions to the admission of every item of testimony offered and received below. Nor is it a part of the duty of counsel representing the government, to urge microscopic objections against an honest claimant, and urge the forfeiture of his property for some oversight of the commissioners in not requiring proof according to the strict rules of the common law. When there is any just suspicion of fraud or forgery, the defence should be made below, and the evidence to support the charge should appear on the record. If testimony of witnesses is alleged to be unworthy of belief, the record should show some reason to justify the court in rejecting it. The former opinions of this court may be referred to, on questions of law, but cannot be quoted as evidence of the character of living witnesses."
To these observations we will only add, that the United States have never sought by their legislation to evade the obligation devolved upon them by the treaty of Guadalupe Hidalgo to protect the rights of property of the inhabitants of the ceded territory, or to discharge it in a narrow and illiberal manner. They have directed their tribunals, in passing upon the rights of the inhabitants, to be governed by the stipulations of the treaty, the law of nations, the laws, usages, and customs of the former government, the principles of equity, and the decisions of the Supreme Court, so far as they are applicable. They have not desired the tribunals to conduct their investigations as if the rights of the inhabitants to the property which they claim depended upon the nicest observance of every legal formality. They have desired to act as a great nation, not seeking, in existing *359 their authority over the ceded country, to enforce forfeitures, but to afford protection and security to all just rights which could have been claimed from the government they superseded.
DECREE AFFIRMED.
NOTES
[*] 22 Howard, 392.
[] Id., 443.
[] Pelletreau v. Jackson, 11 Wendell, 123; Jackson v. Waldron, 13 Id., 184.