KANSAS PACIFIC RAILWAY CO. v. LYDIA H. CUTTER, *as Administratrix, &c.*

1. FOREIGN JUDGMENT; *Attestation.* It seems that the attestation of a foreign record, under section 905 of the revised statutes of the United States, must be made by the clerk in person, and cannot be made by a deputy or other person acting as a substitute for him.

2. OBJECTION TO TESTIMONY, *Must be Specific.* An objection to the introduction of testimony, to be available in this court for purposes of error, must, except perhaps in cases where the defect cannot be obviated by further proof, distinctly and clearly state the point of objection, so that we can see from the record that the very matter to which our attention is directed was presented to the mind of the trial judge.

3. INSTRUCTIONS; *Waiver of Error.* Where the charge of the court is in accord with the instructions asked by the party now alleging error, it will, for the purposes of the case, be conclusively presumed to be correct.

4. DAMAGES; *Death from Wrongful Act of Another.* In an action under section 422 of the code of civil procedure, (Gen. Stat., p. 709,) to recover damages for the death of a party, and outside of the question of exemplary damages, the recovery is to be of a pecuniary compensation for a pecuniary loss.

5. ———— In determining the amount of such compensation, much must be left to the good sense and sound judgment of the jury upon all the facts and circumstances of the case. No uniform and precise rule can be laid down for estimating the value to the survivors of the life of the deceased, for the elements which go to make up such value are personal to each case.

6. ———— A charge to a jury, in such an action, that they are not to take into consideration the pain suffered by the deceased, or the wounded feelings of the surviving relatives, but may consider the relations between him and the next of kin, the amount of his property, the character of his business, and the prospective increase of wealth likely to accrue to a man of his age, with the business and means which he had, or the possibility of a decrease of the same, is held under the circumstances of the case to present no error.

7. ———— *Compensatory Damages; Items; Verdict.* . Where the jury find the pecuniary loss to be a certain sum, (in this case $1,320,) and in answer to a specific question say that the loss consisted of notes and mining stocks, and there is testimony that the deceased had notes and mining stocks which were lost on account of his death, and the amount of the verdict seems to be but a reasonable compensation for such loss, the verdict will be upheld, although the amount named by the jury cannot be deduced from the testimony by any mere addition of the items of an account, and although it is not made perfectly clear in what manner,

whether by running of the statute of limitations, or otherwise, the death of the deceased brought about the loss of the notes and stocks.

8. ———— *When Exemplary Damages not Recoverable.* Where the testimony shows that the railroad train upon which the deceased was riding as a passenger was thrown from the track, and that thereby the deceased received the injuries from which he died, and fails to show any unusual speed or want of care in the management of the train, or by any direct evidence the cause of the train's being thrown from the track, and discloses as the only evidence of negligence on the part of the company the fact that some of the ties at and near the place of the accident were rotten, and it appears that the company had a suitable and competent person in charge of the track at that place as section-boss, and that he was from time to time and as fast as he deemed necessary for the safety of the track replacing the old and rotten ties with new and sound ones, *held,* that no case was shown for exemplary damages.

## *Error from Riley District Court.*

ACTION by *Lydia H. Cutter,* as administratrix of the estate of Joseph Stewart, deceased, to recover damages sustained by the next of kin of said deceased by reason of his death. The plaintiff was appointed administratrix of said estate by the probate court of Arapahoe county, territory of Colorado. Stewart came to his death in Riley county, in this state, while riding as a passenger on the cars of the *Railway Company,* August 1st 1872, while *en route* from Kansas City, Mo., to Denver, Colorado; and this action was brought under § 422 of the civil code, the petition alleging that the deceased's death was caused by the wrongful acts, negligence, and mismanagement of the defendant. [The case was here upon demurrer to the petition, (16 Kas. 568,) when it was held, that an administrator appointed in another state or territory could maintain an action in this state under said § 422.] A trial upon the merits was had in the district court, at the March Term thereof 1876. The plaintiff offered in evidence the record of the probate court of Arapahoe county upon which her appointment as administratrix was made, and also the letters of administration issued to her as such administratrix. Such record and letters were dated September 27th 1872, and such letters of administration were authenticated as follows:

TERRITORY OF COLORADO, COUNTY OF ARAPAHOE, SS.

I, Webster D. Anthony, county clerk of said county, and *ex-officio* clerk of the probate court of Arapahoe county, do hereby certify the above and foregoing to be a true, correct, and complete transcript and copy of certain letters of administration issued to Lydia Harvey (*) upon the estate of Joseph Stewart deceased, as the same appears from the original now on file in my said office.

Witness my hand and the seal of said court, at Denver, in said county, this 4th day of June 1875.

[SEAL.]            WEBSTER D. ANTHONY, *Clerk,*
                        *By James F. Watson, Deputy.*

TERRITORY OF COLORADO, ARAPAHOE COUNTY, SS.

I, William C. Kingsley, judge of the probate court of said county and territory, do hereby certify that the said Webster D. Anthony, who by his deputy James F. Watson hath signed the above certificate and attestation, and to which the seal of said probate court is annexed, was on the 4th day of June 1875, and the time said certificate and attestation was made, the clerk of the said probate court, and the keeper of the records and files of said court; that the said certificate and attestation of the said Webster D. Anthony is in due form, and by the proper officer, and to all acts by the said Webster D. Anthony so done, full faith and credit are and ought to be given, in judicature, and without.

This 18th day of August, 1875.

            WILLIAM C. KINGSLEY, *Probate Judge.*

The letters and record were admitted in evidence over the objection and exception of defendant. Several witnesses testified respecting the condition of the defendant's railroad track, the injury and death of Stewart, his age, health, circumstances, etc., and his next of kin, and their dependence upon him for support, or assistance. The jury found for the plaintiff, and assessed her damages in two items — compensatory, $1,320; exemplary, $2,200. Judgment upon the verdict for $3,520, and the *Railway Company* brings the case here on error.

---

[*THE petition states that since the issuance of these letters of administration to the plaintiff, she has intermarried with Benj. P. Cutter; and the action is brought in her present name of Cutter; 16 Kas. 568.]

*C. E. Bretherton*, and *J. P. Usher*, for plaintiff in error.

*Green & Hessin*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action under section 422 of the code, by the personal representative of Joseph Stewart deceased, to recover damages for the death of the deceased caused by the negligence of the company. The first error alleged is in the admission of a record of the probate court of the territory of Colorado, certified to in the name of the clerk by a deputy. It it not claimed that this record as authenticated was admissible under the section of our own statutes applicable thereto, (Gen. Stat. p. 700, § 371,) but it is claimed that it was under section 905 of U. S. Revised Stat. That section however authorizes attestation by the clerk, and names no other person. And it seems to be settled that this of itself grants no authority to a deputy-clerk. 1 Greenleaf on Ev. (13th ed.) § 504; *Stephenson v. Baumster*, 3 Bibb, 369; *Morris v. Patchin*, 24 N. Y. 394. This last case is directly in point, and in it the court says: "The attestation is directed to be by the clerk, and not by any person acting as a substitute for the clerk, or possessing like power under the state laws. In making the certificate, which is made evidence under the act of congress, the clerk derives his authority from the federal and not from the state laws, and the certificate has vitality and effect, not by reason of the official character of the officer making it under the laws of the state, but in virtue of the act of congress prescribing it as the mode of proof in this particular case. The certificate of the judge, as to the authority of any person other than the clerk to make the certificate, is of no more force than would be a like certificate as to the effect of the judgment. Again, if a deputy-clerk, or other person, could make the certificate by reason of the power conferred upon him by the state laws, and thus satisfy the act of con-

*1. Foreign judgment; how authenticated.*

gress, such law should be proved as other facts are proved, or as other laws are proved, and not by the certificate of the judge, which is not made evidence of any such fact. The records were not competent evidence, and were improperly admitted."

But it is insisted that, conceding the defect in the authentication, no objection was made on that ground, and therefore the error will not now be considered. When offered, the record was objected to "as being incompetent." Thereafter a motion was made to strike out the record "as not being competent evidence;" and finally an instruction was asked in reference to the fact sought to be proved by it. "No competent evidence has been offered," etc. Was this objection sufficient to raise the question now presented? In *Ferguson v. Graves,* 12 Kas. 43, it was said, "that where evidence is apparently admissible for any purpose, or under any circumstances, the court does not err in admitting the same, unless the reasons for its exclusion are given by the party objecting, has been repeatedly decided by this court." And in *Botkin v. Livingston,* 16 Kas. 41, that "if a party fails to object to the introduction of an instrument on the ground that its execution is not proven, he cannot thereafter raise the question. He has waived that point." In 1 Greenleaf on Ev. (13th ed.) § 421, the author uses this language: "It is also to be noted as a rule, applicable to all objections to the reception of evidence, that the ground of objection must be distinctly stated at the time, or it will be held vague and nugatory." The idea of course is, that as this court simply reviews the rulings of the district court it should be made clear to us exactly what these rulings were. A party should not be permitted to try his case upon one series of questions in that court, and upon another in this. If upon every question to which the attention of that court was directed it ruled correctly, with what propriety is it said that it erred, and for its errors the judgment must be reversed? As said in the case of *E. & C. Rld. Co. v. Lawrence,* 29 Ind. 622, "it is of consequence in the administration of

*2. Objection to testimony must be specific.*

justice that all such questions shall be so distinctly made in the lower court, that judgments shall not be liable to reversal upon points never before the mind of the presiding judge, which do not affect the real controversy, and which if suggested might have been obviated." In the case of *Bundy v. Hyde*, 50 New Hamp. 117, it appears that on the trial an objection was made to testimony as "not competent." The judge desired that the specific ground of incompetency be pointed out. This not being done, he declined to consider the objection, and this ruling was sustained. *The State v. Jones*, 7 Nev. 408, is still more closely in point. An objection was made to a deposition as incompetent evidence. Depositions were admissible in a criminal case only under certain circumstances and conditions. Although the record failed to show those circumstances and conditions, yet the objection was held too general to reach the point of a failure to show that the deposition was taken in a case authorized by statute. See also *Camden v. Doremus*, 3 How. U. S. St. 515; *U. S. v. Anguisola*, 1 Wall. 352; *Longabaugh v. V. C. & T. Rld. Co.*, 9 Nev. 271; *Dewy v. Dornec*, 18 Cal. 83; *Leek v. Wilson*, 24 Cal. 398.

It may not be possible to specify in advance a form of objection which will be sufficient in every case. The only rule that can be laid down is, that it must be such as distinctly and clearly presents the precise point of objection, and upon which the ruling of the court is asked. We must be able to see from an examination of the record that the attention of the trial judge was called to the very matter presented to us. It often happens that the objection is so apparent that a very general expression could not fail to bring it to attention. If it does, that is sufficient. But not infrequently such general expressions really cover up the specified matter, and naturally call the attention away to something else. Then they are not sufficient. Now in the case at bar there was a pivotal question as to the right of a foreign administratrix to maintain such an action. True, it had been ruled upon in the district court on demurrer, but it had not yet

been determined in this court. It was still an open question. When therefore the record of the letters of administration in Colorado was offered in evidence, an objection that such evidence "was incompetent" would naturally suggest this vital question, and indicate simply a desire to preserve that question beyond any chance of waiver. The thought of the court would scarcely be turned to the mere authentication of the record. It would look to the substance rather than the form of the testimony — to that which was irrelevant, and beyond the power of correction, rather than to that which was incidental and could be corrected. Thrice was the objection presented, and the very repetition, as well as the manner of its repetition, would only strengthen the conviction that the substantial question was all that was sought to be raised. It seems to us that the attention of the district court was not distinctly and clearly called to the' specific objection here made, and that therefore it should not now be considered. It perhaps should be remarked, before passing from this subject, that the views we have expressed are in reference to cases in which the defect could be obviated by further proof. If the defect was necessarily fatal, and could not be avoided by other testimony, the consideration suggested might have little force.

Objections were also taken to the instructions of the court on the question of damages. The instructions authorized the award of exemplary or punitive damages. For this they are now challenged; but as the instructions asked by plaintiff in error also recognized the propriety of such damages in actions of this nature, we do not think the question is fairly in the case. It may be remarked, in passing, that there is a marked difference in the language of the statutes of the various states in this respect. In some, as in California and Kentucky, such damages are expressly or by clear implication authorized. *Myers v. San Francisco*, 42 Cal. 215; *Bowler v. Lane*, 3 Met. (Ky.) 313. In others, New York, Ohio, Wisconsin, Illinois, and Pennsylvania, by the present statute the recovery is

3. Instructions; waiver of error.

Damages; statutory provisions.

7—19·KAS.

plainly limited to the actual damages, to compensation. *Green v. Hudson R. Rld. Co.*, 32 Barb. 25; *Grotenkemper v. Harris*, 25 Ohio St. 510; *Cassillo v. Landwehr*, 28 Wis. 522; *Even v. C. & N. W. Rld. Co.*, 38 Wis. 613; *Brady v. Chicago*, 4 Bissell, 448; *C. & P. Rld. Co. v. Rowan*, 66 Penn. St. 393; *P. ˙ Rld. Co. v. Keller*, 67 Penn. St. 300. Such also is the force of the original English statute known as Lord Campbell's act, 9 and 10 Vict. 93; *Blake v. Midland Rly. Co.*, 18 Q. B. 93. While in some states, as Maine, Colorado, and Kansas, and Pennsylvania prior to 1868, the statute simply provides for the recovery of damages. *State v. Railroad Co.*, 58 Maine, 176; *K. P. Rly. Co. v. Miller*, 2 Col. 442; *K. P. Rly. Co. v. Linden*, 3 Col. 000; *Penn. Rld. Co. v. Zebe*, 33 Penn. St. 330; *Penn. Rld. Co. v. Henderson*, 51 Penn. St. 315. See also Field on Damages, p. 490 and following, where the various statutes and rulings are collected. It is said in the Maine case, that the purpose of the statute was simply to prevent the abatement of the action by the death of the party injured, leaving all other matters to be controlled by the ordinary rules governing actions for personal injuries. But as before stated, it is hardly necessary for us in this case to settle the construction and effect of our own statute.

The instructions are also challenged in respect to the measure of damages other than exemplary. The language of the charge is as follows:

4. Compensatory damages.

"You should not take into consideration the pain suffered by deceased, or the wounded feelings of the surviving relatives, nor give punitive damages, unless said accident was the result of gross carelessness, and reckless indifference to the rights of passengers. But you should give what you deem a just compensation to them for such loss. And in determining the same, you may take into consideration all the circumstances attending his death; the relations between him and his children, and next of kin; the amount of his property; the character of his business, and the prospective increase of wealth likely to accrue to a man of his age, with the business and means which he had, or the possibility of a decrease of the same. Damages, in a case of this kind, must depend very much upon the good sense and sound judgment of the jury, upon all the facts and circumstances of the case."

Many cases have arisen in the different states under statutes like this, and many inquiries have been made in the various courts as to the proper matters for consideration by a jury in fixing the damages. It is safe to say, that no rule has yet been laid down of definite and precise statement, and applicable to all cases. That the purpose of the statute was 5. Rule for determining amount of damages. to give to the survivors compensation for the value of the life taken away, may be conceded; and therefore all the elements which go to make that life valuable, are proper matters of consideration; and matters which do not affect its value to the survivors, such as the pain and suffering endured by the deceased, the grief and sorrow of the survivors, are not to be considered. But how shall the value of a man's life be determined? By the needs of the survivors? Where the deceased leaves a family of small children, should the recovery be greater than where he leaves none? That logically would exclude all recovery where the deceased left no one dependent upon him. By the probable earnings of the deceased? That would often furnish the most inadequate compensation in the most deserving of all cases, as, where a wife and mother is the party killed. By the present value of the probable net accumulations of the deceased, considering his present business and expectation of life? That would be open to objections of the same character as the last, only of a far more serious nature. In the very nature of things it seems to us an exact and uniform rule for measuring the value of the life taken away to the survivors, is impossible. The elements which go to make up the value are personal to each case. All that can well be done is, to say that the jury may take into consideration all the matters which go to make the life taken away of pecuniary value to the survivors, and, limited by the amount named in the statute, award compensation therefor. To go beyond this, and lay down an arbitrary rule for valuing the life of the deceased, a rule applicable to all cases alike, however satisfactory it might be because of its uniformity, would in many

instances operate to defeat the accomplishment of the wholesome purposes sought by this act. It was well said by Mr. Justice Nelson in the case of *Railroad Co. v. Barron*, 5 Wall. 90, in language quoted in the charge in this case, that "the damages must depend very much on the good sense and sound judgment of the jury, upon all the facts and circumstances of the particular case." The instructions as given in this case find abundant support in the latest and best decisions, and do not present matters other than those proper for the consideration of the jury. Thus, in the case of *Catawissa Rld. Co. v. Armstrong*, 52 Penn. St. 282, the court says: "The jury were instructed to put a value upon his life, and in doing this to have regard to his probable gains and accumulations, his age, his health, his usual wages, and the family he had to support. We have said that in this class of actions all that can be sought or recovered is pecuniary indemnity for a pecuniary loss, and we think nothing else was submitted to the jury in this instance." In *McIntyre v. Central Rld. Co.*, 37 N. Y. 287, "What did the deceased usually earn?" was held to be a proper question as tending to show the value of the decedent's life. In *Filley, Adm'r, v. Hudson R. Rld. Co.*, 24 N. Y. 471, it was said, that "It is not required that the degree of kindred should be such as to create the duty of sustenance, support or education," and the same proposition is affirmed in *R. R. Co. v. Barron*, 5 Wall. 90. See also, *Filley, Adm'r, v. Hudson R. Rld. Co.*, 29 N. Y. 252; *K. P. Rly. Co. v. Miller*, 2 Col. 442, and cases hereinbefore cited on exemplary damages. The only expression in the charge which occurs to us as possibly misleading, is that which suggests for the consideration of the jury the circumstances attending the death of the deceased. Outside of the question of exemplary damages, it is the fact and not the manner of death that determines the amount of damages. But from the view we have taken of the testimony, we cannot think that the plaintiff in error was prejudiced, or the jury misled.

The jury found a general verdict for the plaintiff, but answered specific questions as follows:

"*Q.*–If you find for the plaintiff, state the pecuniary loss sustained by the next of kin of the deceased by the death, and in what such loss consisted. *Ans.*–We find that the next of kin of Joseph Stewart, deceased, have sustained pecuniary loss by his death to the amount of $1,320. Said loss consisting of notes and mining stocks.

"*Q.*–If you assess damages beyond pecuniary loss sustained by next of kin, state the amount. *Ans.*–We further assess damages beyond the pecuniary loss sustained by the next of kin, at the amount of $2,200."

An examination of the testimony satisfies us that there was evidence sustaining the first answer, but that no case was made out for exemplary damages. A verdict of $1,320, as the pecuniary loss, was not excessive. Perhaps it may not be clear how the jury reached that exact figure, as the loss in notes and stocks, for the testimony is in this respect indefinite, though Mrs. Cutter testified that her father had some notes and mining stocks which were lost on account of his death, the stocks being sold for non-payment of assessments; and again, that there was over $1,000 in notes, and that she put them into a lawyer's hands, but that he could not collect any; that she was told that several of the parties whose notes he held were reliable; that one note given by a man named Parsons was for $800 or $900, and that he was as much able to pay now as he ever was, etc. Why the Parsons note was not collected, is not specificially stated. Perhaps it was barred by the statute of limitations. But we do not wish to be understood as stating that the testimony points out in exact sums the amount of $1,320 in stocks and notes, or makes it perfectly clear how the death of the decedent brought about the loss even of those notes and stocks. We do decide however that $1,320, as compensation for the loss, was warranted by the testimony; and that while the jury have indicated in what respect they considered the death as working a pecuniary loss, it is not essential to the sustaining of the verdict that from figures and amounts named in the testimony the result can be reached as by adding up the items in an account.

7. Items of damages; verdict.

In regard to the damages above compensation, the exemplary or punitive damages, we do not think the case warranted

**3. Exemplary damages not recoverable.** such damages. The injury happened in this way: The train, upon which deceased was riding as a passenger, was thrown from the track, and thereby he received such bruises as caused his death in a few hours. The record is silent as to any positive evidence of the cause of the accident. It seems probable however, that the train jumped the track from some defect in it, rather than from running over anything, or with unusual speed. And in reference to a defect in the track, it appears that there were some rotten ties at and near the place of the accident. And that is the only matter of negligence which from the testimony can in any manner be imputed to the company. And while of course that is sufficient to sustain an award of compensatory damages, yet it does not disclose that gross and wanton negligence which is necessary to justify exemplary damages. It appears further from the testimony of the company, that it had a suitable party employed to take care of this portion of the track, as section-boss, and that from time to time he replaced the rotten ties with sound ones as he thought the safety of the track required. We think therefore upon the whole case that the judgment should be modified by striking out the $2,200 awarded for exemplary damages, and affirmed as to the rest. The costs of this court will be divided.

All the Justices concurring.