THE A. T. & S. F. RLD. CO. v. JOSEPH BROWN, Adm'r, &c.

1. NO JUDGMENT; NO FINAL ORDER; No Review in Supreme Court. Where in an action against a railroad company the jury returned a verdict against the company, and also made certain special findings of fact, and the company made a motion for judgment upon those findings, the verdict to the contrary notwithstanding, which motion was overruled by the court, and thereafter the company made a motion to set aside the verdict and judgment and for a new trial, which motion was sustained, held, that as no judgment had been rendered against the company and no final order made against it, no petition in error would lie in this court to review the action of the district court in refusing a judgment upon the special findings in favor of the company. (Burton v. Boyd, 7 Kas. 17.)

2. EXCESSIVE DAMAGES, Verdict for, Properly Set Aside. One Wm. Haas, a yard switchman in the employ of the defendant was, while attempting to make a coupling of two freight cars, so injured that death ensued. His administrator, charging negligence upon the company, brought suit under the statute to recover damages for the next of kin. It appeared that the deceased was a single man, leaving neither widow nor child surviving him; that his nearest relative was a mother possessed of some means; and from the history of the young man, that his past life had not been and his future life probably would not be of any great pecuniary value to his mother. The jury awarded the full statutory limit, $10,000. The district court set aside the verdict as excessive. Held, That such ruling must be sustained; that while no arbitrary rule of computing the value of the life of a deceased can be laid down, and much must be left to the discretion of the jury, yet it was not the intention of the statute to merely mulct a defendant in damages for negligence, nor to make death

a pecuniary speculation to the next of kin, but the intention was to make good to the next of kin the actual loss sustained by such death; and in determining such loss many things should be considered by a jury, among them, whether the next of kin was legally or in fact dependent upon deceased for support, whether the relative pecuniary situation of the deceased and the next of kin was such as to show that probably the next of kin would receive any portion of the deceased's earnings, and also whether the past history of the deceased tends to show that the next of kin would be likely to receive any benefit from the continuance of his life.

## *Error from Lyon District Court.*

ACTION brought by *Joseph Brown*, as administrator of the estate of William Haas, deceased, against the *Railroad Company*, to recover damages alleged to have resulted from the negligence of the defendant in wrongfully causing the death of said Haas. Trial at the March Term, 1881, of the district court, when the jury made certain special findings of fact, and rendered a verdict for plaintiff for $10,000. The court refused to give defendant a judgment upon the special findings, but granted it a new trial. Both parties bring error to this court. The opinion states the facts.

*Geo. R. Peck,* and *J. Jay Buck,* for plaintiff in error:

1. The court should have instructed the jury on the evidence for the defendant, and especially should have given defendant judgment on the special findings. (*Dryden v. Leach,* 26 Law Jurist, 221, reported in 5 Law Reg. 745; 71 Ill. 238; 5 Ohio St. 541; 28 id. 341; 21 Wis. 382; 33 Md. 588; 25 Kas. 188.

2. Negligence cannot be inferred from a mere act which is the cause of the injury, unless the injury is the necessary and usual consequence of the act. (*Wood v. Rly. Co.,* Sup. Ct. Wis., Feb. 1881, 9 Rep. 771.)

3. Haas knew the danger and was bound to avoid it, or he must be treated as having assumed all the risks incident thereto. (26 L. J. [N. S.] Exch. 221; 9 Exch. 223; 51 Miss. 637; 49 Cal. 192; 44 id. 187; 50 Ga. 465; 61 Pa. St. 58; 63 id. 146; 76 id. 389.)

Brief of Plaintiff in Error.

4. The court referred the question of exemplary damages to the jury. This was error, for there was neither malice nor wanton negligence on the part of the defendant corporation. (21 Wend. 618; 8 id. 472; 8 Johns. 92; 13 id. 131; 36 Wis. 35; 19 Kas. 496; 36 Conn. 182; 4 Cal. 298; 71 Ill. 177; 74 id. 421; 82 id. 550; 91 U. S. 489; 59 Mo. 27; 56 N. Y. 44; 48 Vt. 403.) No exemplary damages can be allowed by the statute. (Cooley on Torts, 271.)

5. There was some evidence before the jury of a ditch at some point in the defendant's yard, temporarily made to carry off the surface water caused by a recent rain. The weight of the evidence clearly located this ditch at least a hundred feet from the place of the accident. It was clearly the right and privilege of the corporation to dig a ditch if needed, and its existence could not be charged or treated as negligence. (2 Neb. 319. See also 62 Mo. 232; 67 id. 239; 71 id. 66; 47 id. 567; 29 Conn. 548.) Because, if the defect in that yard was patent and open to observation, or such as the ordinary use of the servant would have disclosed or observed, he was bound to know it.

6. The case was tried below by the plaintiff and court upon the theory that once the injury was shown, the burden thereafter rested upon the defendant. From the very nature of the case, the burden was upon the plaintiff throughout, and the jury were not properly instructed. (75 N. Y. 332; 18 id. 248; 35 Me. 422; 18 id. 32; 42 Ala. 672; 36 Mo. 13; 27 Vt. 643; 39 Md. 329; 38 id. 588; 35 Ohio St. 627; 11 Kas. 83–90.)

7. The questions persistently directed by plaintiff's counsel, the objections interposed by defendant, and the rulings of the court in relation to the loading of the flat car, compelled the jury to understand that such cars must be loaded simply in view of the convenience of coupling and uncoupling them, entirely losing sight of the more important feature of their transportation through long distances.

8. No rule is more familiar than this, that the servant is bound to use care, and cannot recklessly disregard all danger,

and, when injured, look to his employer for redress. (*Dryden v. Leach*, supra; 4 Oreg. 52; 29 Conn. 558; 47 Ind. 454; 31 Cal. 376; 2 id. 78; 6 Iowa, 443; 49 Pa. St. 60; 53 id. 255.)

9. Where the servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon himself. (11 Wall. 554; 41 Md. 298; 46 Cal. 409; 1 Coldw. 612; 25 Ala. 659; 30 Wis. 674; 113 Mass. 398; 8 Wright, 175; 13 id. 60.)

10. The proof was conclusive that Haas had plenty of railroad experience before taking employment of the defendant; and if he knew the dangers there to be met with, and was injured by them when he could easily have avoided such injury, the defendant is not liable. (20 Mich. 105; 8 N. Y. 175; 25 id. 566; 6 Barb. 243; 20 id. 449; 6 Hill, 592; 67 Ill. 498; 5 Ohio St. 541, 565; 2 Am. L. R. 248; 31 Cal. 376; 102 Mass. 579, 596; 32 Mo. 411; 9 Cush. 112; *Hughes v. Winona &c. Rld. Co.*, Sup. Ct. Mich., July, 1881.)

11. The defendant below requested the court to have the jury answer special findings numbers 6, 7, and 10. Not only this, but the court tells the jury in instruction No. 21 not to answer these three questions. These questions were "material to the case, and based upon the evidence," and it was error to refuse them. (25 Kas. 189, third point in syllabus.) These findings had reference to the measure of damages, and the paper upon which they were printed went to the jury with those numbers erased by the court. For this reason, even though the jury in part answered some of them, they clearly understood that it was wholly immaterial whether Minnie Haas would, in the natural order of things, survive her son or not.

12. The damages in this case are notoriously excessive. They are the extreme limit of the statute—all that a widow with a family of small children could possibly have claimed, be she ever so poor and dependent upon the labor of her husband. This is a case prosecuted in the interest of a rich mother to recover for the loss of a son, who, when compara-

tively idle, had lived at her expense for years; and while temperate in his habits, was of a roving disposition, had never aspired to anything more than manual labor, and with a robust constitution, at the age of nearly twenty-six years died, leaving an estate of $37.10. This verdict of itself, as to the measure of damages, is its own refutation. Besides, our statute gives the highest damages of any statute upon this subject. (8 N. W. Reporter, 522; 8 Gray, 45; 21 Wis. 380; 22 id. 586; 29 id. 584; 87 Ill. 131, 245; 86 id. 296, 212; 37 N. Y. 288; 38 id. 450; 10 Kas. 524; 18 Mo. 164; 31 Pa. St. 273; 33 id. 318.)

13. Damages should be calculated on reasonable expectation of benefit. (54 Pa. St. 495; 7 Am. Rep. 450; 47 N. Y. 317; 25 Ohio St. 510; 66 N. C. 154.)

14. We complain of instruction No. 22:

" The burden of proof is upon the plaintiff to prove all the material allegations of his petition *not admitted* by the defendant, and upon the defendant to show contributory negligence on the part of the deceased *by a preponderance* of the evidence in the case."

In a case where the connection of the deceased with the accident is shown by the plaintiff in making out his case, as in the case at bar, the better doctrine is, that the burden is upon the plaintiff to show the deceased free from fault. If it were the case of a passenger or a stranger, where the mere injury suggested negligence, the rule would be as the court intended to give; but not so here. Again, the court does not inform the jury, nor do they know what allegations are "material," nor is the court clear as to the burden until it reaches the defendant, when it says that he must show contributory negligence by a " preponderance of the evidence in the case," leaving the jury not only to infer, but to understand that the burden on the defendant is the greater. If this order is correct, we were prejudiced by the manner in which it was manifested. A proposition may be correctly stated in the abstract, and yet be misleading. (19 Ohio St. 110; 24 id. 668.)

15. We were entitled to a judgment for costs; its denial was prejudicial to us, and the order of the court below overruling our motion and demand for judgment "involves the merits of this action."

We believe that this case comes within the *third subdivision* of § 542 of the code; and claim, as a matter of law, that when the court below overruled and *denied* our motion for a judgment, it made just as much of an "order" as though it had *granted* our motion.   It is only a ruling for plaintiff, instead of defendant.

We think the case at bar distinguishable from that of *Burton v. Boyd*, 7 Kas. 17, for in that case the findings of the jury were against the party moving for a new trial.   Here we claim that all the findings touching plaintiff's right to recover are in favor of the defendant below.   The refusal to give us judgment was material error, affecting the substantial rights of the complaining party.   This error was not cured by the granting of a new trial.   If our substantial rights were injured, we are entitled to a remedy, and if a new trial is insufficient to give us what we are entitled to under the law, then we cannot be estopped by the statement that a new trial protects us in our rights.

Granting a new trial shows that in the opinion of the court below the opposite party was not entitled to a judgment, but does not prove that we are not deprived of some substantial right which might have been corrected without a new trial.   True, we asked for a new trial; but can it be held that this deprives us of any other remedy provided by law?   We do not think we waive any of our rights by asking and obtaining a new trial.   If upon the special findings we are entitled to a judgment, would it not be wrong to put us to the expense of another trial?   The very "justice of the case" requires, as a matter of law, judgment to be entered for the defendant when the merits of the case, as disclosed by the special findings of fact, show that the *general* verdict is inconsistent therewith. (Code, § 287.)

This case then is very similar to a case upon a demurrer to

the evidence. In the one case the jury say what the facts are; in the other, the party by demurring to the testimony of the plaintiff, admits it to be true. In either case the question arises, to what judgment, if any, do the facts entitle the plaintiff? If a demurrer to the evidence is overruled, the defendant may, after he has made a motion for a new trial, have the error reviewed; and the question involved, if the evidence is all presented to this court, is not alone whether a new trial should be granted, but whether or not the evidence so demurred to entitles the plaintiff in error to a judgment. This court will presume that the plaintiff below presented all his evidence. And if all the evidence did not entitle him to recover, what reason would there be in remanding it for a new trial? So here, if the evidence supports the special findings, and these findings do not show any right to recover, why say that the defendant below must take a new trial?

*Scott & Lynn*, for defendant in error:

1. The district court erred in granting defendant's motion for a new trial on the ground named in its motion, to wit, excessive damages appearing to have been given under the influence of passion or prejudice. (Field on Damages, § 882.) The verdict having been rendered under proper instructions of the court, in harmony with the principles governing this class of cases as laid down in *K. P. Rly Co. v. Cutter*, 19 Kas. 83, we insist that the court had no right to disturb it. The legislature having fixed the maximum of damages recoverable in such cases, we submit that no verdict, not in excess of such amount, is or can be excessive, and that the limitation in the statute is expressive of the legislative idea of what would or would not be excessive. The proper construction of that statute is to make the jury, under the facts of the case, when brought within the law, the exclusive judges of the amount of damages up to the limit fixed by the statute, and it has been held that when the statute makes the jury the sole judges of the amount of damages, the court cannot disturb their finding. (27 Miss. 423.) This act is in the highest sense

29—26 KAS.

remedial, and is entitled to receive the liberal construction which appertains to such statutes. (2 Vroom, 349.)

The court had no right to disturb the verdict in the face of the statute, and especially in the absence of any proper showing. (62 Pa. St. 329; see also 2 Sedgw. on Dam. [7th ed.] 652–655, note *a*.) Even where it has been held that the power to disturb the verdict as being excessive, rests in the discretion of the court (20 Ga. 428), yet this discretion does not supplant that of the jury. The court must decide whether there is enough evidence to support the verdict, and if in its opinion there is sufficient, then the discretion of the court ceases. Beyond that point the discretion of the jury is unrestrained. Hence it follows that verdicts are often sustained, although they do not meet with the full approval of the court. (61 Ill. 287; 5 Ind. 224; 23 Barb. 639; 4 E. D. Smith, 110.)

We might for argument's sake grant that the verdict is large; but if we admit it to be excessive, that is no ground for a new trial. The statute says, "excessive damages, appearing to have been given under the influence of passion or prejudice," (Code, § 306.) This court has decided that "the mere fact that damages are excessive, is not ground for a new trial. They must appear to have been given under the influence of passion or prejudice." (16 Kas. 456.) The law is, however, that the verdict must be so flagrantly excessive that the mind at once perceives it to be grossly unjust, or such as to warrant the belief that it was brought about by corruption, malice, or other undue means. (1 Minn. 156; 10 id. 350; 8 id. 154; 27 Mo. 28; 21 id. 354; 8 Rich. [S. C.] L. 144; 25 Ark. 381; 27 Miss. 68; 53 How. Pr. 385; 54 Ga. 224; 12 Barb. 492; 19 id. 461; 24 Cal. 513; 36 id. 590; 16 Ill. 405; 7 id. 432; 38 id. 242; 13 N. J. L. 294; 32 id. 70; 19 Conn. 317; 1 Bibb, 247; 16 Me. 187; 16 Pick. 541.)

Granting or refusing a new trial for any ground mentioned in the statute may be reviewed like any other final order or judgment. (Dass. Comp. Laws, § 542, p. 674.) The granting of a new trial on the ground of excessive damages is a ques-

tion of law, and if the court errs in so doing, it is the duty of the court of errors to reverse the judgment. (34 Wis. 188.)

Although pain and anguish cannot be considered in a death case, courts rightly consider death the most damaging species of personal injury. (8 Kas. 656; 9 Heisk. 829.) The following cases will illustrate what the courts of the country think are not excessive verdicts : 19 Kas. 488; 11 id. 8; 14 id. 520. In *Shaw v. B. & W. Rld. Co.*, 8 Gray, 46, there were three verdicts for $15,000, $18,000 and $22,250, for personal injuries less than death; last verdict sustained. When a lawyer suffered permanent injuries less than death, a verdict for $20,-000 was sustained. (63 Barb. 260.) Permanent injuries less than death to a common laborer were held to warrant a verdict of $15,000. (13 Nev. 106.) In a case of injuries to a brakeman less than death, $12,000 was held not to be excessive. (50 Tex. 254.) In case of a brakeman getting $540 per annum, and being 30 years old, $11,000 was held not to be excessive for permanent injuries less than death. (43 Iowa, 662.) Permanent injuries less than death to a female school teacher, were held to justify a verdict for $8,958. (88 Ill. 377.) In case of a common teamster suffering permanent injuries less than death, $9,500 was held not excessive. (62 Me. 552.) In Wisconsin, where the court is very strict on damages, it sustained a verdict of $5,500, where a sailor got one leg and two ribs broken, which confined him ten or twelve days in bed. (28 Wis. 569.) In a criminal conversation case, $10,000 was held not excessive. (4 E. D. Smith, 110.) A verdict for $200 in a death case was held so grossly inadequate that it was set aside. (46 Cal. 26.) In case of killing an infant daughter, a person from whom the least can be expected, the next of kin recovered $5,000, and the verdict was sustained. (42 Cal. 216.)

It was suggested below that the relation of this mother to her son would not warrant as much damages as a needy wife and children. If this be the law, it is the first case we are aware of where poverty or wealth cuts any figure in the amount of recovery. If such were the law, it would pay rail-

roads to employ none but men of wealthy families, for in such case, the next of kin, not needing his support, could not recover if he were killed. This court says such is not the law. It is not to be determined by the needs of the survivors. (19 Kas. 91; 29 Gratt. 431, 570; 84 Pa. St. 419; 48 Tex. 372; 9 Heisk. 12, 841; 4 Col. 162.)

A new trial should not be granted for excessive damages, when the only defense at the second trial will be one that goes in mitigation of damages. (1 Bibb, 354.)

The jury were bound to consider all this evidence showing the relations of the deceased and his next of kin, his intelligence and vigor, the salary he was obtaining, his savings, and the fact that he was engaged in an employment which has a regular system of promotions, and that he was an attentive, intelligent, and energetic man, who had already been advanced by the defendant after two weeks of service, and would, in all probability, in time have earned a much larger sum than $684 in a higher position, if the possibilities of the future had not been forever closed to him by his untimely death. (19 Kas. 488–494; 43 Iowa, 676; 16 Irish L. R. [N. S.] 415.)

2. The defendant sought to prove by different witnesses that it was the custom of railroad companies throughout the country to load long and projecting timbers on one car, we suppose, for the purpose of establishing that the flat car in question was not negligently loaded. To this character of testimony the plaintiff objected; the objection was sustained, and on the argument of the motion it was strenuously insisted that this testimony was improperly excluded, and that the ruling is error. The offered testimony was properly excluded. (107 Mass. 496; 109 id. 126; 1 Allen, 187; 8 id. 564; 8 Gray, 547; 55 Me. 444; 2 McLean, 157; 50 Md. 5; 91 U. S. 454; 31 Ala. 501; 3 Cush. 174; 50 Ill. 61; 7 Mo. App. 358; Lawson on Usages and Customs, 328; 17 Wall. 357.)

3. The railroad company, on its motion for a new trial, contended that the question propounded to Mr. Ferren was

improper, he not being an expert. This question involved how far over the timbers projected — an unmeasured distance, upon which any witness may give an opinion. (14 Kas. 110; 24 id. 453; 117 Mass. 122.)

4. Another and most important point is, have we any cause of action? The court below thought we had, and overruled that part of the defendant's motion for a new trial. The company also thought we had, as it did not demur to our evidence. However, if we have no cause of action, although the company has waived that question, we should like to know it. A completer man-trap than that in which Haas was caught, was never, in our judgment, invented. The following authorities show this to be a double case of negligence: 50 Tex. 254; 36 Iowa, 31; 8 Allen, 441; 100 U. S. 213; Dass. Comp. Laws, p. 784, §§ 28, 29.

5. It was strenuously insisted by the defendant in the court below that the question of the expectancy of the life of the next of kin, the mother, must be taken into consideration by the jury in determining the damages to be recovered, because, as it was claimed, the deceased being younger, his expectancy of life would be greater, and the probabilities are that but for his unfortunate death he might have outlived her, and no part of his probable future earnings could have gone to her. She might not have lived to enjoy any of his future accumulations, and therefore it is insisted the court erred in not allowing evidence on this point, and not instructing the jury in this regard as requested. Was this error?

We say the damages were fixed at the death of Haas; and so far as prospective increase or decrease of wealth or probable earnings are concerned, or enter into the case, the question is, what would probably accrue to him or to a man of his age? However, the next of kin is not a matter to be tried in the district court in this suit, more than perhaps to show that Haas left some next of kin. It is a matter for the probate court to settle when distribution is made by the administrator. (48 Ill. 410; 82 id. 198; 83 id. 204; Field on Dam., § 634; 46 Iowa, 195.)

The opinion of the court was delivered by

BREWER, J.: Upon a general statement of this case, the facts are as follows: One Wm. Haas was in the employ of the plaintiff in error as a yard switchman in the city of Emporia, in November, 1879, and on the 17th of that month was, while attempting to make a coupling of two freight cars, killed. His administrator brings this action against the company in behalf of the next of kin, and seeks to recover, claiming that the injury resulted from the negligence of the company. The case went to a jury, which returned special findings of fact, and a verdict in favor of the administrator of $10,000. The railroad company made a motion for judgment upon these findings, which was overruled. Thereupon it made a motion for a new trial, which was sustained; and now both parties bring error to this court, one filing a petition and the other a cross-petition in error. The railroad company claims that the court erred in refusing to give it a judgment upon the special findings of fact. The administrator claims that the court erred in sustaining the company's motion for a new trial, and insists that judgment should have been entered in his favor for the amount of the verdict. So far as the error alleged by the railroad company is concerned, it is not one which is now properly reviewable. No judgment has been rendered against the company, and no final order made within the scope of that term as defined in the statute. The case is still pending in the district court. No judgment may ever be rendered against the company, and if not, it has no ground of complaint. It is well known that the old rule was, that no proceedings in error would lie until after a final judgment. Our statute enlarges the matters which may be taken up for review, but nowhere does it, in terms at least, provide for the review of a ruling like that complained of in this case. A question very similar was before this court in the case of *Burton v. Boyd*, 7 Kas. 17, and was there determined adversely to the claim of plaintiff in error. It is true that the facts in

1. No judgment; no final order; no review in supreme court.

that case were not exactly parallel to those in the case before us, yet the proposition in the syllabus fits this case very closely; and resting upon that case as a mere authority, there is no such difference as would prevent the decision there from controlling here. Being a mere question of practice, a decision then made, although open to doubt, should be adhered to, unless plainly wrong, or unless gross injustice would result from adherence thereto. Permanency of forms and practice is a matter always worthy of regard. Until the legislature declares a change, that which has been decided as a rule of practice should very seldom be disturbed. The question is not simply what the present justices consider the true interpretation of the statute, but what has been the announced decision of this court. So far as that goes, and so far as it compels a decision of any question in any case, as a rule it ought to be adhered to. *Stare decisis* is a maxim which in matters of practice almost absolutely controls. Now that the order complained of is not a final order as defined by the statute, is not seriously questioned. It is not final, because as the record shows, each party has been remanded to a new inquiry as to rights and liabilities. Counsel for plaintiff in error rest somewhat on the third subdivision of § 542 of the code, and insist that an order overruling a motion for judgment on special findings is "an order that involves the merits of the action or some part thereof." In the case of *Stebbins v. Laird,* 10 Kas. 229, an order granting leave to file an amended bill of particulars was sought to be reviewed by proceedings in error before the final disposition of the case. We held that such an order is not one involving the merits of the action; and while not attempting to define the exact scope of that subdivision, held that it could include only such orders as amount to an adjudication, a disposition of some part of the claim or defense. Now it is plausible to say that denying an application for judgment is an adjudication against the claim or defense, in whatever stage of the proceedings it is made; but such a ruling is not one based upon the testimony, but upon some technical advantage which the state of

the findings is supposed to give as against the general ver-
dict, and it does not cut off the party from subsequently
pursuing his rights of claim or defense.   In this case the
defendant is shut off from no defense which upon the merits
of the case it may have.   There has been no order or ruling
which has deprived it of any real defense on the merits.   The
case goes on to another trial just as though none had been
had.   Every defense on the merits which the company had,
it still has.   The only effect of that ruling is to deprive it of
an advantage which, despite the general verdict against it, it
supposed it had, not by reason of the testimony, but by rea-
son of certain findings.   At any rate, the ruling does not
come so clearly within the scope of such subdivision as to
justify us in departing from the former decision of this court.
Furthermore, it may be suggested whether the company has
not waived its right to avail itself of the error in such ruling,
if error there were, by thereafter making a motion for a new
trial, and obtaining it.   See further, *Brown v. Kimble*, 5 Kas.
80 ; *Edinfield v. Barnhart*, 5 Kas. 225, in which the court
held that an order overruling a motion to dismiss an appeal
is not one involving the merits of the action.   Also, *Dolbee
v. Hoover*, 8 Kas. 124.

The question presented on the cross-petition is, whether the
court erred in granting a new trial, and this ruling the statute
expressly provides may be reviewed by proceedings in error;
but we have repeatedly held that where the ruling of the court
below is in favor of a new trial, its proceedings will be scanned
with less scrutiny, because both parties have on the second trial
a full opportunity of presenting their claims to a new jury.
(*Field v. Kinnear*, 5 Kas. 233, *City of Ottawa v. Washabaugh*,
11 Kas. 124.)

Now it is said by counsel for the administrator that the
only ground upon which the court in fact granted a new trial
is that of excessive damages.   While it is probable that this
is so, yet upon the face of the record the motion seems to have
been sustained upon other grounds, and therefore such other
matters are open for inquiry in this court.   Returning, how-

ever, to the mere matter of damages, the jury went to the full
limit of the statute, and awarded $10,000. The trial court
considered this excessive, and so excessive as to
warrant its interference. Can we in review say
that such ruling was erroneous? We think not.

2. Excessive
damages, ver-
dict for, prop-
erly set aside.

Counsel for the administrator have filed an elaborate brief citing
many cases in which large verdicts have been sustained for
personal injuries. Their argument is practically this, that if
for injuries not taking life large verdicts may be awarded and
sustained, that when life is taken no verdict can be declared
excessive which keeps within the limits of the statute. We
cannot assent to this doctrine. Prior to these various statutes
in the several states, it was the accepted law that no action
would lie in case of death. To obviate this supposed defect
in the common law, these several statutes, taking their origin
in Lord Campbell's act in England, were passed. They all
aim to give compensation for the life taken away, and various
attempts have been made to prescribe some exact rule for
computation of the value of the life taken. Several courts
have laid down arbitrary rules, but in the case of the *K.
P. Rly. Co. v. Cutter*, 19 Kas. 83, following the case of
*Rld. Co. v. Barron*, 5 Wall. 90, we held that no arbitrary
rule can justly be laid down; that the elements which
enter into the just estimate of a life are so varied that
the matter must be left, under the direction of the court,
to the sound discretion of the jury. The purpose of the
statute is compensation, and that up to a certain point the
value of the life taken should be paid by the wrong-doer to
the parties interested in the life. The statute has put the
limit at $10,000. We do not understand that that puts a
maximum as the value of the most valuable life, with all
other lives to be graduated downward therefrom; and yet we
do not agree with counsel that because no man would give
his life for $10,000, and that as life and money are not com-
mensurate or convertible terms, no court can say, when a jury
awards $10,000 for any life, that it is excessive. It is not
the loss of the decedent, but the loss of the survivors which

is to be estimated. That involves not merely the probable accumulations of the deceased, but the probability of the benefit of such accumulations inuring to the survivors. Where one who was the head of a family with minor children is killed, there is a reasonable certainty that his earnings if he had survived would inure directly to the benefit of the widow and children. Where one dies without wife or child, with no one legally dependent upon him, and with only remote relatives as his next of kin, there is only a remote probability that his earnings, whatever they may be, would inure to such next of kin. The law of human experience is, that when a man has no one legally dependent upon him, his earnings, be they great or small, are appropriated to his own benefit or pleasure, so that his life, whatever may be his capacity for earning, has but little if any value to remote relations. Again, when the nearest of kin are not remote relatives, and yet are not in any way legally dependent, the benefit of such life to such next of kin will depend largely upon their needs as well as upon his earnings. Where the deceased, leaving no wife nor child, leaves as his next of kin father or mother, and such father or mother is in good pecuniary condition, it is fair to say that his life would if survived have been of comparatively little value to them. In other words, his earnings would be used for his own pleasure or profit, and not go to the increase of their present good financial condition. The law of human experience and probabilities controls as to these matters. If according to that law the life of the decedent, if continued in existence, would bring little gain to the next of kin, little compensation should be given for his loss. We cannot agree that the theory of the law is to punish for the mere negligent destruction of life; and the law of compensation means that no more should be given to the next of kin than they probably would receive from the decedent if his life had not been taken away. And as before indicated, many matters must be considered in determining how much that life would probably be worth to such next of kin if it had not been taken away. In

the case before us the decedent left neither wife nor child; his mother was next of kin, and in determining what would be the probable value cf that life to her, regard must be had to what he had done in the past toward her support and maintenance, and what, considering her means and his earnings, as well as his habits and disposition, he would be likely to do in the future. It is not fair to say that all his surplus earnings would go to her, because it is not the law of human experience. If she had means enough for her own support, the probabilities are that none of his earnings would go to her; that in one way or another he would consume them entirely. The statute does not contemplate a speculation on the probable earnings of the deceased; it simply aims to make good to the survivors that which they have probably lost by his death. Of course there is no absolute certainty in matters of this kind. The life taken away to-day by negligence of the defendant, may have been one which by the laws of nature would have passed away to-morrow if no outward accident had intervened, or perchance if it had escaped the negligence of the defendant to-day, it would have fallen a victim to the negligence of some other party to-morrow; so that the real value of the life is problematical and speculative to a certain extent. Of course there are tables of mortality, laws of average, which must be respected and have force in any question which in any degree involves a speculation on the future; but the laws of probability and average are not to be invoked simply by the plaintiff; they make with the defendant as well, and it is entitled to every solution of probabilities in its favor just as fully as the plaintiff is. It appears in this case that deceased was twenty-five years of age; that about ten years ago he was employed for something less than a year in the post office in Chicago; that at the close of such employment he went out to California, and remained there until 1876. It does not appear that during his employment in the post office in Chicago, or during his absence in California, that his labor was of any value to his mother; on the contrary, it appears that at one time she sent to him a

present of $30. In 1876 he returned home; at that time his representations to his mother were that he had accumulated $500 during his absence, but that he had been compelled to use such surplus during a two-months sickness. He came home without anything, and the first year after his return he did nothing. The next two years he was employed at the gas works for three or four days a month, at $1.50 a day. This during the three years was all of his earnings in Chicago. Aside from that, he collected rents due his mother for certain buildings owned by her, and also made such repairs in those buildings as from time to time their condition demanded. This for three years was the sum total of his labors in Chicago; and a young man who lives in a large city like Chicago for three years, earning no more than he did, must be lacking in either capacity, desire, or need for work. In 1879 he came west, entered into the employ of the Santa Fé road, and remained in such employment for several weeks prior to his death, receiving wages at the rate of $1.90 per day. Was a life such as his had been, and from what it had been, what it promised to be, worth $10,000 to his mother? We are clearly of the opinion that it was not. We think that from the testimony evidently it had been worth nothing to his mother up to the date of his death. From the time that he started out to do for himself up to the day of his death, striking a balance between him and her, he was her debtor instead of she his. In other words, up to the time of his death, and from the time he started to do for himself, his life had been worth nothing to her. For years he boarded with her, receiving clothing from her, and at one time a present of $30. It does not appear that his earnings or his labor ever made good to her the value of her expenses in his behalf; so that, judging the future by the past, his life was one which would have been of but little value to her, and in such a question as this the past is the main light which illumines the future. The enigma of the future of a life is not to be solved by the mere matter of faith and hope, or even by the natural possibilities of accomplishment, but mainly and chiefly by the experiences of the past,

and what the life has already been. The law runs little along the lines of sympathy and affection, but rather along the lines of the actual and the probable. Tested by the past, the future of this young man's life promised little to his mother.

Again, it appears from her testimony that she was the owner of four houses and twenty-one lots in the city of Chicago. The value of this property is not clearly disclosed, but the rent she received from the houses she leased was about $50 a month, and the taxes on the property she owned are at present $300 a year, and had been at one time shortly after the Chicago fire as high as $1,000 a year. Such a tax implies no small value to the property. It also further appears that neither she nor her unmarried daughter, who with the deceased comprised the entire family, was engaged in any labor or business, but lived off from the property they owned; and also that the sum total of the deceased's property was about two months' wages due from the defendant. It is evident, comparing her means and his needs and earnings, that little of such earnings would go to her. The pecuniary value of his life to her must have been slight. The district court properly held that an award of $10,000 is excessive. We not only think that its ruling is not apparently erroneous, but that it is evidently correct. Counsel in their brief ask this court to name the amount which would not be considered excessive, providing it arrives at the conclusion that the present award is excessive. Such is not the function of this court; the amount which ought to be given, if any should be given, is to be ascertained by a jury. The sole function of the court is to see that the jury in making such award are not influenced by sympathy, feeling or prejudice, and do not go beyond what is fair compensation. We do not know what action we should take if both parties to this proceeding stipulated that this court might upon the testimony as it stands in the record determine what judgment should be entered. In the absence of some such stipulation, we simply inquire whether the district court erred, and in this case we do not think that it did, and therefore affirm its rulings.

Finally, in view of the manner in which this case comes before us, we do not feel warranted in attempting a review of other questions which in fact exist in the case. We do not think the practice of bringing a case to this court before final judgment is to be encouraged; and in view of the briefs of counsel, and the stress laid upon this particular question (the amount of damages), we think it right to leave the decision right here. Upon the question of liability, upon the facts of the case, we may add that the case of the same plaintiff in error against Plunkett, 25 Kas. 188, is very nearly in point, and to that case we refer for any discussion of the principles controlling the liability of the defendant.

The judgment will be affirmed, and each party will pay the costs of its own proceedings in error.

HORTON, C. J.: I concur in the affirmance of the judgment of the district court, but do not assent to all of the language of the opinion. I think the railroad company waived any error (if any existed) in the ruling of the court in refusing judgment upon the findings of fact of the jury, by asking and obtaining a new trial.

VALENTINE, J.: I concur in the judgment of this court affirming the judgment of the court below, but I do not concur in the opinion delivered by my brother BREWER. There are several things contained in the opinion in which I do not concur; but I wish to mention only one of them particularly. Brother BREWER seems to found his decision of the first question involved in the case upon the decision made in the case of *Burton v. Boyd*, 7 Kas. 17. Now I do not think that that case is any authority for the present case. It is true, the first paragraph of the syllabus in that case seems to be nearly applicable to the present case; but still, the facts of the two cases are so unlike that the decision in that case cannot be any authority for the decision in this case. In that case, a verdict was rendered against Burton, and he immediately moved for a new trial, and his motion was sus-

tained.  In the present case, certain special findings of fact
were made, probably in favor of the railroad company, and
the railroad company immediately moved for judgment on
the verdict, and the motion was overruled; and it is this ruling
of which the railroad company now complains.

The first paragraph of the syllabus in the Burton case
reads as follows:

"A party against whom no judgment has been rendered or
final order made, and who, after the trial in the court below,
moved for and obtained an order granting him a new trial,
has no good reason to complain in this court of the action of
the court below."

Now to make this syllabus applicable to the present case,
a very important fact, and the principal fact in this case,
must be inserted, making the syllabus read as follows:

"A party against whom no judgment has been rendered or
final order made, and who, after the trial in the court below,
[and after certain special findings of fact have been made,
probably in his favor, moved for judgment in his own favor
upon such verdict, and the court below overruled the motion,
and then afterward] moved for and obtained an order grant-
ing him a new trial, has no good reason to complain in this
court of the action of the court below."

All the above words in brackets belong to this case, but do
not belong to the Burton case.   The Burton case was brought
to the supreme court for the purpose of reversing a judgment
rendered against Burton's co-defendant in the district court,
John Shoemaker; while this case is brought by the railroad
company to this court for the purpose of reversing the order
of the district court overruling the railroad company's motion
for a judgment upon the verdict of the jury.   It will there-
fore be seen that the Burton case is no authority in this case.
The decision in the Burton case is unquestionably correct;
but whether a similar decision rendered in the present case
can be said to be correct, is doubtful.   The decision in the
present case goes a long way beyond that made in the Burton
case.  I think, however, the decision in the present case is
correct.   There is no statute authorizing the railroad com-

pany to bring the case to this court, unless it is the third subdivision of § 542 of the code. That subdivision, with what precedes it, provides that "an order that involves the merits of an action, or some part thereof," may be brought to the supreme court on petition in error. My construction of that clause is that the order mentioned therein is one that involves the merits of an action, or some part thereof, by way of adjudication, and that it is not an order that leaves the merits of the whole action and every part thereof still to be adjudicated and determined. There may be some doubt as to whether this is the correct interpretation of that clause, but still I think it is, and hereafter I think that such must be held to be the correct interpretation. This is the first time, in my opinion, that the question has ever been decided by this court; or, to speak more correctly, this is the first time that it has ever been held by this court that a party moving for a judgment upon a verdict cannot bring petition in error directly to this court from the order of the district court overruling such motion.