## The Union Pacific Railway Company v. William Dunden.

1. Evidence; *Finding; Administration; Jurisdiction.* In an action brought by the personal representative of a deceased minor against a railway company, to recover damages for the death of the intestate, an issue of fact was presented by the pleadings, as to whether the letters of administration were properly granted upon the estate of the minor; it being claimed by the company that there was no estate to be administered. The records and findings of the probate court introduced in evidence made a *prima facie* case, showing that the minor died, leaving, among other things, "an estate of personal articles." The evidence of the father of the minor was introduced, which tended to prove that his child died without leaving any estate. *Held,* That the evidence of the father, as against the general finding of the jury, was not conclusive; and *held, further,* that it cannot be said, as a matter of law, upon the record presented in this case, and against the general finding of the jury, that the letters of administration were granted without jurisdiction.

2. Death; *Damages; Instruction, not Misleading.* In an action by the personal representative of a deceased minor, to recover damages for the death of the intestate, it is within the province of the jury to form an estimate of the damages with reference to the pecuniary injury, present or prospective, resulting to the next of kin. In such a case, the jury may estimate the pecuniary damages from the facts proved, in connection with their own knowledge and experi-

1 — 37 KAS.

U. P. Rly. Co. v. Dunden.

ence, which they are supposed to possess in common with the generality of mankind, and it is not necessary that any witness should have expressed an opinion of the amount of such pecuniary loss. And *held*, as applied to this case, the instruction that the jury could use their common knowledge, in assessing the damages, without evidence as to the amount thereof, not erroneous or misleading.

3. PROBABLE FUTURE SERVICES, *not Itemized.* In an action to recover damages for the death of a minor, caused by the wrongful act or omission of another, the trial court commits no material error in refusing to require the jury to itemize in separate or specific amounts the value of the probable future services of the intestate to his next of kin.

4. ———— *No Contributory Negligence.* Although a minor, killed while playing upon a turn-table of a railway company, had sufficient intelligence to know that it was wrong to trespass upon the turn-table, yet if he had no knowledge that playing upon the table was unsafe or dangerous, it cannot be said that he was guilty of contributory negligence.

5. JUDGMENT, *not Grossly Excessive.* Where the plaintiff recovers a judgment for three thousand dollars, as the personal representative of a deceased minor, who at the time of his death was eleven years and eight months old, and was also intelligent, healthy and promising, and left surviving him a father, who was a poor man, working as an engineer of steam machinery, and having a wife and three children, *held*, not so grossly excessive as to require this court to reverse the judgment therefor.

*Error from Leavenworth District Court.*

ACTION by *William Dunden,* as administrator of the estate of William Dunden jr., deceased, against *The Union Pacific Railway Company,* to recover damages for the death of his said son. October 10, 1885, judgment for the plaintiff · for $3,000 and costs. The defendant company brings the case here. The opinion states the material facts.

*A. L. Williams,* and *Chas. Monroe,* for plaintiff in error.
*L. B. & S. E. Wheat,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Upon the general statement in this case, the facts are as follows: William Dunden jr. was injured on Au-

gust 16, 1884, on a turn-table, located upon the grounds of the Fort Leavenworth military reservation, while playing with other children. From the injuries received he died the next day. At the time of his death he was eleven years and eight months old. Prior to his injuries, he was intelligent, healthy and promising. His father, William Dunden, lived at the time in Leavenworth city, and was not in the best of health. He was a poor man, not owning the house in which he lived. His occupation was that of an engineer of steam machinery, and he received as wages for his services from seven to eight hundred dollars a year. After the death of his son, his family, other than himself, consisted of his wife and three children, the oldest being sixteen years of age, and the youngest a year old. The father, as administrator, brought this action against the Union Pacific Railway Company to recover damages for the death of his son. In the petition, it is alleged that the death occurred by reason of the negligence of the railway company in leaving the turn-table unlocked and unguarded. Judgment was rendered against the railway company for three thousand dollars, and that company now seeks to have the judgment reversed.

It is claimed that the probate court of Leavenworth county had no jurisdiction to issue letters of administration to William Dunden, upon the ground that his son left no estate. The authority for granting letters of administration is found in §1, chapter 37, Compiled Laws of 1885, which reads:

"That upon the decease of any inhabitant of this state, letters testamentary, or letters of administration, on his estate, shall be granted by the probate court of the county in which the deceased was an inhabitant or resident at the time of his death."

The contention is, that there is no provision in the statute for administration, either in the case of a resident or a non-resident, unless there is an estate to be administered. (*Perry, Adm'r, v. St. J. & W. Rld. Co.*, 29 Kas. 420.) Whether the rule announced in the foregoing case applies to the issuance of letters of administration upon the decease of an inhabitant

of this state, we need not now decide. Letters of administration may be granted upon the estate of a minor, as well as upon the estate of any other person. To the claim that William Dunden left no estate, the answer is, that the records of the probate court of Leavenworth county made a *prima facie* showing of jurisdiction to issue the letters of administration. On February 7, 1885, William Dunden made an affidavit before the probate judge that his son William Dunden jr. died, leaving, among other things, "an estate of personal articles." The letters of administration recite: "That William Dunden, late of the county of Leavenworth, an inhabitant of said county, died intestate, having at the time of his death property in this state, which may be lost, destroyed, or diminished in value, if speedy care be not taken of the same." The administrator gave bond, with two sufficient sureties, in the sum of two hundred dollars, as prescribed by the statute. The administrator also made an affidavit before the probate judge—

"That he would make a true and perfect inventory of and faithfully administer all the estate of the said deceased, and pay the debts as far as the assets would extend, and account for all assets which should come to his possession or knowledge."

The records of the probate court were read to the jury. The only evidence offered to contradict or rebut the *prima facie* case-made was in the cross-examination of the father of the deceased, who testified, among other things, that his son at the time of his death had "nothing, other than some little change; that what he had in the way of personal effects and clothing he had provided him with; that he had worked at one time for a canning factory, and earned a little money; that he did not know how much of this he had, as that was a matter between the boy and his mother; that when he earned money he gave it to his mother; that while working for the canning factory he received twenty-five cents a day." Admitting that the evidence of the father was contradictory to and conflicting with the findings and records of the probate court, yet it was not conclusive. The personal representative, in cases like this, brings the action, not

1. Evidence; finding; administration; jurisdiction.

for himself nor in the right of the estate, but as trustee for the distributees—the next of kin. The jury had the right to pass upon the facts in issue, and as was said in *Wheeler, Adm'r, v. St. J. & W. Rld. Co.,* 31 Kas. 640, "We cannot say from the facts as found by the jury that the letters of administration issued to the plaintiff in error ought to be revoked."

It is next claimed that the trial court erred in instructing the jury that if they found for the plaintiff they could use their common knowledge in assessing his damages, without evidence as to the amount thereof. The language of the instruction may perhaps be criticised, but the instruction, as applied to this case, was neither erroneous nor misleading. In such a case as this the jury may estimate the pecuniary damages from the facts proved, in connection with their own common knowledge and experience in relation to matters of common observation. It is not absolutely necessary that any witness should have expressed an opinion of the amount of the pecuniary loss. Damages are to be assessed by the jury with reference to the pecuniary injury sustained by the next of kin in consequence of such death. This is not only the actual present loss which the death produces, and which could be proved, but also prospective losses. How this pecuniary damage is to be measured, or what shall be the amount, must be left largely to the discretion of the jury. The court undoubtedly intended by the instruction to inform the jury, and they must have so understood, that if they found for the plaintiff they could use their common knowledge in assessing his damages, without direct evidence of the specific pecuniary loss. The jury had presented to them, evidence of the parents of the deceased; their position in life; the occupation of the father; the condition of his health; the age of his son; his intelligence; his ability to earn money, etc.; and it was their province, from this evidence and their general knowledge, to form an estimate of the damages with reference to the pecuniary injuries, present and prospective, resulting to the next of kin. It is impracticable to furnish direct evidence of the specific loss occasioned by the

*2. Death; damages; instruction, not misleading.*

death of a child; and to hold that without such positive proof a plaintiff could not succeed, would in effect defeat any substantial recovery. (*Ihl v. Railroad Co.*, 47 N. Y. 317; *City of Chicago v. Scholten*, 75 Ill. 469; *Railway Co. v. Barker*, 39 Ark. 491, and cases cited; *Nagel v. Railway Co.*, 75 Mo. 653; *City of Chicago v. Hesing*, 83 Ill. 204; *M. R. Rld. Co. v. Richards*, 8 Kas. 101.)

In the case of *Waite v. Teeters*, 36 Kas. 604, the instruction that the jury might use their own knowledge in determining the value of the corn, was held to be misleading; but in that case proof could easily have been offered of the value of the corn standing in the field, although it was distant from the railroad and market.

In *A. T. & S. F. Rld. Co. v. Brown, Adm'r*, 26 Kas. 443, referred to as controlling this case, the deceased was twenty-five years of age, with a widowed mother and a sister, who lived off the property they owned. In that case the testimony showed that the deceased had been worth nothing to his mother up to the time of his death, and it was well said, "that judging the future by the past, the life of the deceased was one which would have been of little value." In that case the deceased had lived long enough to establish that there could be no reasonable expectation of pecuniary advantage to the mother from his life.

In *A. T. & S. F. Rld. Co. v. Weber, Adm'r*, 33 Kas. 543, also referred to as an authority, the jury found specially that the deceased was in the habit of drinking intoxicating liquors to excess, for years before his death, and that his life was of no pecuniary value to his next of kin. In such a case, clearly nothing but nominal damages could be recovered. In that case the principal contention was, that as no actual damage or pecuniary loss was sustained by the next of kin, not even nominal damages could be recovered.

It is next claimed that the trial court erred in refusing to require the jury to answer certain special questions. All of the questions which the railway company desired to submit, with one exception, were inquiries as to how much a year the

deceased, if he had lived, would have contributed to the support of his father, and the items thereof. In refusing to submit these questions, we think there was no material error. Much that has already been said concerning the damages to be assessed by the jury in such a case as this, applies with peculiar force to the questions proposed. As the jury may compensate for present and prospective pecuniary injuries, and as the amount of these injuries must be left largely to their discretion, it would be impossible with any reasonable accuracy to have answered the questions. The value of the probable future services of the deceased, to his next of kin, during his minority, must, in the nature of things, have been largely a matter of conjecture. It would be impossible to itemize the value of such probable future services.

*3. Probable future services, not itemized.*

"In the very nature of things it seems to us an exact and uniform rule for measuring the value of the life taken away to the survivors, is impossible. The elements which go to make up the value are personal to each case. All that can well be done is, to say that the jury may take into consideration all the matters which go to make the life taken away of pecuniary value to the survivors, and, limited by the amount named in the statute, award compensation therefor. To go beyond this, and lay down an arbitrary rule for valuing the life of the deceased, a rule applicable to all cases alike, however satisfactory it might be because of its uniformity, would in many instances operate to defeat the accomplishment of the wholesome purposes sought by this act. It was well said by Mr. Justice Nelson in the case of *Railroad Co. v. Barron*, 5 Wall. 90, that 'the damages must depend very much on the good sense and sound judgment of the jury, upon all the facts and circumstances of the particular case.'" (*K. P. Rly. Co. v. Cutter*, 19 Kas. 91.)

As to the question whether the deceased knew it was wrong to play upon the turn-table, an answer either way would not have affected the case. He might have known that it was wrong to trespass upon the property of the railway company and yet have had no knowledge that the use of the turn-table was dangerous, or even unsafe. If the company had presented the inquiry whether the de-

*4. No contributory negligence.*

ceased knew that it was dangerous or unsafe to play upon the turn-table, a wholly different question would be before us for determination.

Further complaint is made, that the damages are grossly excessive. We cannot say that the judgment as rendered is so excessive as to require this court to reverse the judgment. In Illinois, where the action was for the death of a boy between six and seven years of age, a verdict for two thousand dollars was sustained. (*Railroad Co. v. Becker*, 84 Ill. 483.) In Tennessee, a verdict for three thousand dollars for the death of a child eighteen months old was sustained. (*Railroad Co. v. Connor*, 9 Heisk. 20.) In New York, where the deceased was between six and seven years of age, the jury awarded thirteen hundred dollars as damages for loss of probable future services, and the court refused to set aside the verdict as excessive. In that case there was no proof that the child was earning anything at the time she was killed. (*Oldfield v. Railroad Co.*, 3 E. D. Smith, 103.) In another case in the same state, where the action was for the death of a boy eight years of age, a verdict of twenty-five hundred dollars was rendered, and the supreme court would not interfere. (*McGovern v. Railroad Co.*, 67 N. Y. 417.) In another case in the same state a girl of six was struck by a locomotive, and killed; the jury awarded five thousand dollars damages. The court was asked to set aside the verdict as excessive, but declined to interfere, saying that as a matter of law it was impossible to say that the actual pecuniary injuries resulting from the death of the infant might not be that amount. (15 Cent. L. J. 286.)

5. Judgment, not grossly excessive.

The judgment of the district court will be affirmed.

All the Justices concurring.